Eliazer D. Chapman

5100 E. Tropicana Ave, Apt. 53A

Las Vegas, NV 89122

Phone: (305) 713-6056

Email: eliazer_76@aol.com

Plaintiff, Pro Se



UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

2:25-cv-02227-NJK

ELIAZER D. CHAPMAN, Plaintiff, Pro Se,

v.

CITY OF LAS VEGAS; CITY OF LAS VEGAS DEPARTMENT OF PUBLIC SAFETY; CITY ATTORNEY'S OFFICE; FREMONT STREET EXPERIENCE LLC; SERGEANT JOPALIAN; OFFICER C. BRYAN; OFFICER S. SCOTT; SERGEANT HECTOR (FSE SECURITY); STEVE [LNU], PRESIDENT OF FREMONT STREET EXPERIENCE; UNKNOWN FSE SUPERVISOR (DECIBEL-METER TAMPERING AND RETALIATION); AND DOES 1–30, INCLUSIVE,

each individually and in their official, supervisory, and/or administrative capacities,

Defendants.

Case No.: _____

OFFICIAL COMPLAINT AND VERIFIED CLAIM UNDER 42 U.S.C. §§ 1983, 1985, 1988; MONELL; AND CIVIL RICO (18 U.S.C. §§ 1961–1968);

**INCLUDING STATE-LAW TORT DAMAGES (NEGLIGENCE, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, AND ABUSE OF PROCESS);** AND FOR DECLARATORY, INJUNCTIVE, COMPENSATORY, PUNITIVE, AND OTHER RELIEF

## PRELIMINARY STATEMENT

1. This action is brought by Eliazer D. Chapman, a dual citizen of New York and Nevada, professional street performer, and founder and captain of Acrobat Allstars — a collective dedicated to lawful artistic expression, community engagement, and public-space performance.

2. Plaintiff and his troupe have become recognized ambassadors of Las Vegas's open-air culture, drawing tourists and media attention while embodying the free-expression values that Fremont Street was designed to celebrate.

3. Since early 2023 and continuing through November 6, 2025, Defendants — acting under color of law — have engaged in a sustained campaign of intimidation, selective enforcement, and unlawful restraint targeting Plaintiff and other performers. These actions include suppression of artistic speech, manipulation of decibel readings, threats of trespass or arrest, and denial of equal access to the public forum.

4. The City of Las Vegas, its Department of Public Safety (DPS), the City Attorney's Office, and Fremont Street Experience LLC (FSE) coordinated and ratified these unconstitutional acts through policy, practice, and inaction, in violation of the First, Fourth, and Fourteenth Amendments.

5. Plaintiff seeks to vindicate the rights of all artists performing in public spaces, to restore fairness, and to ensure that the City and its contractors uphold constitutional guarantees rather than exploit them for profit or control.

6. Plaintiff requests declaratory and injunctive relief, structural reform, compensatory and punitive damages totaling $3,500,000, attorneys' fees under 42 U.S.C. § 1988, and such further equitable relief as this Court deems just.

## PARTIES

8. Plaintiff Eliazer D. Chapman is a dual resident of New York and Nevada, professional street performer, and founder of Acrobat Allstars, a performance troupe integrating music, dance, and comedy on Fremont Street.

9. City of Las Vegas is a municipal corporation responsible for the Department of Public Safety (DPS) and City Marshals, and is a "person" under 42 U.S.C. § 1983.

10. City Attorney's Office directed and/or ratified performer-related enforcement policies that curtailed expressive rights.

11. Fremont Street Experience LLC (FSE) operates the pedestrian mall and coordinates enforcement with City Marshals, acting under color of state law (Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982)).

12. Sergeant Jopalian (DPS) refused to take complaints and ratified retaliatory enforcement.

13. Officer C. Bryan (DPS) issued unlawful threats, fabricated incident documentation, and participated in unreasonable search and seizure.

14. Officer S. Scott (DPS) initiated a verbal trespass and collaborated in unconstitutional shutdowns.

15. Sergeant Hector (FSE Security) coordinated trespass enforcement and conspired to intimidate performers.

16. Steve [LNU], President of FSE, approved and maintained policies restricting street performance.
17. Unknown FSE Supervisor (Decibel-Meter Tampering and Retaliation) manipulated noise data and obstructed complaints.
18. DOES 1–30 are unknown officers, supervisors, or private agents acting jointly under color of state law.
19. At all relevant times, each Defendant acted within the scope of employment or agency, making each jointly and severally liable.
20. Plaintiff performs only during daytime hours because FSE granted exclusive nighttime access to a contracted entertainment group known as "Off Axis Stunt Show," featuring tramp-wall and acrobatic acts on Fremont Street's main stages.

   This commercial monopoly forces independent performers out of prime hours, suppressing diversity and public expression. By contracting private vendors while restricting lawful artists, Defendants have created an unconstitutional, viewpoint-based exclusion and an economic stranglehold on a public forum — directly undermining the First Amendment's guarantees of neutrality and equal access.

## FACTUAL ALLEGATIONS

21. Beginning in early 2023, Plaintiff Eliazer D. Chapman, founder of Acrobat Allstars, lawfully performed on Fremont Street, a traditional public forum recognized by the City of Las Vegas for expressive activity. Fremont Street's energy, creativity, and performance culture have historically made it one of the most iconic public spaces in America.
22. Over time, the City, its Department of Public Safety (DPS), the City Attorney's Office, and Fremont Street Experience LLC (FSE) began implementing a coordinated policy of exclusion and intimidation against street performers. The policy favored FSE's commercial partners and branded entertainment over independent artists.
23. These restrictions were not based on safety or legitimate government interests but on economic preference, image control, and selective enforcement. Performers like Plaintiff were targeted for engaging in protected artistic speech — including dance, comedy, and musical expression — in spaces historically open to the public.
24. Throughout 2023, DPS officers and FSE security personnel, acting on directives allegedly coordinated with the City Attorney's Office, escalated confrontations with performers. Meetings between FSE managers, casino stakeholders, and the City Attorney were routinely held to plan "performance control" strategies.
25. Numerous officers told Plaintiff and others that the City Attorney personally authorized them to remove, cite, or arrest performers "if they interfere with Fremont's show" or "don't comply with event policies." These remarks were documented on body-worn cameras and independent video recordings, establishing a direct line of command from City officials to street-level enforcement.
26. The pattern of harassment intensified in late 2024, when Defendants began shutting down entire weekends for commercial events, cutting off performers' access to prime tourist hours. These shutdowns effectively deprived artists of both income and opportunity for lawful expression.

27. By October 2025, this unlawful coordination reached its peak. Defendants used special event permits as a pretext to close Fremont Street to performers from October 17–19, 2025, and again during Halloween weekend (October 31–November 1, 2025).

   These permits contained vague or misleading language but never cited any lawful basis under the First Amendment for excluding performers.

28. During the October 17–19 event, Sergeant Hector (FSE Security) acted at the direction of Officer S. Scott and ordered Plaintiff and his group to cease performing, despite the permit containing no explicit performer ban. Plaintiff was verbally trespassed from the public mall without documentation or due process, in clear violation of City of Houston v. Hill, 482 U.S. 451 (1987).

29. On October 18, 2025, Defendants further escalated suppression efforts. Hector remained on site observing Marshals prepare for confrontation, while FSE managers coordinated enforcement actions. This intimidation forced Plaintiff and others to leave the area, losing income and public goodwill.

30. The permit for October 31–November 1, 2025, stated that "Street performers are not authorized to participate in this event." This single line, buried in administrative text, effectively barred an entire class of expressive individuals from performing — a content-based exclusion repugnant to the Constitution's free-speech guarantees.

31. Plaintiff, already fearful after the prior trespass, did not appear on Fremont during Halloween weekend. He avoided arrest but lost one of the busiest weekends of the year, demonstrating a chilling effect on lawful expression recognized under Laird v. Tatum, 408 U.S. 1 (1972).

32. On November 6, 2025, Plaintiff approached Officer S. Scott to discuss ongoing violations and to notify her of his intent to pursue legal action. He read the Nevada Revised Statutes to her and lawfully announced service within 14 business days. Officer C. Bryan intervened, demanded Plaintiff stop recording, and declared that he could not stand near him — despite being in a public area.

33. Officer Bryan threatened arrest, fabricated an "incident slip" containing only a scribbled number "25-62054," and refused to file a formal complaint. He told Plaintiff to "go to the office" and insisted he would not take the complaint, even though that duty is required by DPS policy.

34. Plaintiff recorded the interaction in full. The footage shows that Plaintiff was peaceful, unarmed, and cooperative. Officer Bryan nonetheless attempted to provoke confrontation, referring to Plaintiff as an "antagonist," and made misleading statements such as "you've got nothing, bro — that's not a crime."

35. When Plaintiff asked whether Bryan's body camera was active, Bryan confirmed it was and stated, "It's gonna be there." This admission establishes the existence of crucial evidence within the City's possession, triggering its duty to preserve all bodycam footage and incident logs.

36. At one point, Bryan ordered Plaintiff to keep his left hand out of his pocket, claiming it was "a safety hazard." Plaintiff complied, even removing his shoes to show he was unarmed — a humiliating and unnecessary public display recorded on video.

37. When Plaintiff sought a supervisor, Sergeant Jopalian arrived but refused to take a complaint. Instead, he instructed other officers that if Plaintiff "annoys" them or "interferes with their business," they should "write obstruction and take him in."

38. This statement, caught on camera, demonstrates explicit retaliatory intent and malicious coordination — proof of municipal policy under Monell.

39. Despite multiple requests, Defendants have refused to produce or document any complaint reports, bodycam logs, or decibel records from these events. Plaintiff has properly requested that these materials be preserved under Rule 34 and Rule 37(e) of the Federal Rules of Civil Procedure.

40. Plaintiff now brings this action to expose the unconstitutional pattern, obtain immediate injunctive relief, and secure accountability for a two-year coordinated campaign designed to silence street performers, monopolize public space, and chill lawful expression in violation of federal law.

# COUNT I – VIOLATION OF FIRST AMENDMENT RIGHTS: FREEDOM OF SPEECH AND EXPRESSION

(42 U.S.C. § 1983 – Against All Defendants in Their Individual and Official Capacities)

41. Plaintiff realleges and incorporates by reference paragraphs 1 through 40 as though fully set forth herein.

42. Fremont Street is a traditional public forum where expressive activity—including street performance—is entitled to the highest constitutional protection. See Schneider v. State, 308 U.S. 147 (1939); Akins v. Nevada Dept. of Public Safety, 588 F. Supp. 3d 1203 (D. Nev. 2022).*

43. Defendants, acting under color of state law, restricted, suppressed, and penalized Plaintiff's lawful artistic expression through threats, citations, and unlawful trespass orders.

44. These restrictions were not narrowly tailored and lacked significant governmental interest. They favored commercial performers, vendors, and FSE-contracted entertainment such as Off Axis Stunt Show while excluding independent artists.

45. By conditioning Plaintiff's ability to speak on official discretion and selective enforcement, Defendants imposed a content-based and viewpoint-based restriction in violation of Reed v. Town of Gilbert, 576 U.S. 155 (2015).*

46. As a direct and proximate result, Plaintiff suffered loss of income, emotional distress, reputational injury, and deprivation of constitutional rights.

47. Plaintiff seeks declaratory and injunctive relief restoring his right to perform, plus compensatory and punitive damages and attorney's fees under 42 U.S.C. § 1988.

# COUNT II – PRIOR RESTRAINT AND UNCONSTITUTIONAL PERMIT SCHEME

(42 U.S.C. § 1983 – Against All Defendants)

48. Plaintiff realleges and incorporates paragraphs 1 through 47.

49. Defendants' "special-event" permits and Fremont-Street-specific rules functioned as prior restraints by forbidding expression in advance of any alleged violation.

50. The October 31–November 1, 2025 permit's single sentence—"Street performers are not authorized to participate in this event"—constitutes an explicit, content-based ban lacking procedural safeguards required under City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750 (1988).*

51. Officers and FSE security routinely enforced these permits without neutral criteria, relying on subjective discretion and oral directives from the City Attorney.

52. Such unbridled discretion and absence of objective standards violate the First Amendment and the Due-Process Clause. See Forsyth County v. Nationalist Movement, 505 U.S. 123 (1992).*

53. Plaintiff's performances were halted or chilled before any conduct occurred, resulting in economic loss and denial of equal access to the public forum.

54. Plaintiff seeks a declaration that these permitting practices are unconstitutional and an injunction prohibiting their enforcement.

---

# COUNT III – RETALIATION FOR PROTECTED EXPRESSION

(42 U.S.C. § 1983 – Against All Individual Defendants)

55. Plaintiff realleges and incorporates paragraphs 1 through 54.

56. Plaintiff engaged in constitutionally protected conduct when he spoke with officers about ongoing violations, recorded public officials, and announced intent to pursue legal remedies.

57. In response, Defendants—including Officers S. Scott and C. Bryan and Sergeant Jopalian—threatened arrest, fabricated incident documentation, ordered Plaintiff to remove his hands from pockets, and refused to accept or log his formal complaint.

58. These acts were motivated by retaliatory animus toward Plaintiff's exercise of free speech and petitioning rights, constituting a violation of Hartman v. Moore, 547 U.S. 250 (2006),* and Ford v. City of Yakima, 706 F.3d 1188 (9th Cir. 2013).*

59. The retaliatory actions were part of a broader custom sanctioned by supervisory staff and the City Attorney's Office, showing deliberate indifference and policy ratification.
60. Plaintiff requests compensatory and punitive damages, declaratory relief, and an injunction forbidding further retaliation or interference with protected expressive conduct.

# COUNT IV – UNLAWFUL SEARCH, SEIZURE, AND DETENTION

(42 U.S.C. § 1983 – Against Officers C. Bryan, S. Scott, Sergeant Jopalian, and Doe Defendants)

61. Plaintiff realleges and incorporates by reference paragraphs 1 through 60 as though fully set forth herein.
62. The Fourth Amendment guarantees individuals the right to be secure in their persons against unreasonable searches and seizures.
63. On November 6, 2025, Plaintiff approached Defendants peacefully to report ongoing constitutional violations. Despite initiating the contact, Plaintiff was subjected to detention and threat of arrest without probable cause or reasonable suspicion.
64. Officer C. Bryan ordered Plaintiff to keep his hands out of his pockets and stated he could only place them there if he allowed a pat-down search, effectively coercing Plaintiff into waiving his Fourth Amendment rights.
65. Plaintiff, who was not suspected of any crime, complied only under fear of arrest and physical restraint.
66. This demand constituted an unlawful stop-and-frisk in violation of Terry v. Ohio, 392 U.S. 1 (1968),* and United States v. Brown, 925 F.3d 1150 (9th Cir. 2019).*
67. Officer Bryan's conduct—combined with Officer Scott's aggressive posture and Sergeant Jopalian's instruction to arrest for "obstruction" if Plaintiff continued to speak—amounted to a de facto seizure without legal justification.
68. No lawful warrant, probable cause, or exigent circumstance existed to justify the intrusion.
69. Defendants' actions, taken under color of law, directly violated Plaintiff's Fourth Amendment rights, causing humiliation, distress, and continued fear of reprisal.
70. Plaintiff seeks compensatory and punitive damages, declaratory relief, and injunctive orders requiring retraining of all DPS and FSE personnel on lawful stop-and-contact protocols.

# COUNT V – DEPRIVATION OF DUE PROCESS AND EQUAL PROTECTION

(42 U.S.C. § 1983 – Against All Defendants)

71. Plaintiff realleges and incorporates paragraphs 1 through 70 as though fully set forth herein.
72. The Fourteenth Amendment guarantees both procedural due process and equal protection of the laws.
73. Defendants violated procedural due process by issuing verbal trespass warnings, citations, and closures of public space without notice, hearing, or opportunity to appeal, in violation of Mathews v. Eldridge, 424 U.S. 319 (1976).*
74. Officers and FSE personnel repeatedly refused to file or document Plaintiff's complaints, denying him a meaningful channel for redress of grievances.
75. Defendants also violated equal protection by targeting Plaintiff and other street performers for enforcement, while allowing vendors, FSE contractors, and homeless individuals to occupy performance zones without sanction.
76. This selective and discriminatory enforcement constitutes arbitrary government action prohibited under Yick Wo v. Hopkins, 118 U.S. 356 (1886).*
77. Defendants' actions were motivated by animus toward performers who criticize enforcement policies or assert constitutional rights, further violating Olech v. Village of Willowbrook, 528 U.S. 562 (2000).*
78. Plaintiff seeks damages and declaratory and injunctive relief requiring uniform application of municipal codes and restoration of access to Fremont Street's public forum.

# COUNT VI – MUNICIPAL AND SUPERVISORY LIABILITY UNDER MONELL

(42 U.S.C. § 1983 – Against the City of Las Vegas, Department of Public Safety, City Attorney's Office, and Fremont Street Experience LLC)

79. Plaintiff realleges and incorporates paragraphs 1 through 78 as though fully set forth herein.
80. The constitutional violations described herein were the direct result of official customs, policies, and deliberate practices maintained by the City of Las Vegas, its Department of Public Safety, and Fremont Street Experience LLC, acting jointly under color of state law.
81. These entities jointly maintained a policy of suppression, including:

(a) prohibiting or restricting performers during commercial events without legal justification;

(b) authorizing officers to fabricate or alter incident documentation;

(c) refusing to accept citizen complaints;

(d) training officers to view performers as "obstructions" rather than expressive participants in public life.

82. The City Attorney's Office ratified these practices by instructing Marshals and FSE staff that they could cite or arrest performers for "obstruction" whenever a show or event was underway.

83. Supervisory officials—including Sergeant Jopalian and FSE management—were aware of the unlawful conduct yet failed to intervene, discipline, or retrain, satisfying deliberate indifference standards under City of Canton v. Harris, 489 U.S. 378 (1989),* and Larez v. City of Los Angeles, 946 F.2d 630 (9th Cir. 1991).*

84. FSE acted jointly with government agencies, performing traditional state functions such as directing law enforcement, thereby operating "under color of state law" pursuant to Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982).*

85. The result was a systemic deprivation of Plaintiff's First, Fourth, and Fourteenth Amendment rights, not isolated misconduct.

86. Plaintiff seeks a declaratory judgment finding these customs unconstitutional; injunctive relief requiring retraining, auditing, and oversight of all involved agencies; termination or reassignment of culpable personnel; and compensatory and punitive damages.

# COUNT VII – CONSPIRACY TO VIOLATE CIVIL RIGHTS

(42 U.S.C. § 1983 and § 1985 – Against All Defendants)

87. Plaintiff realleges and incorporates paragraphs 1 through 86.

88. Defendants conspired to deprive Plaintiff of equal protection and free expression by coordinating enforcement tactics between FSE management, DPS, and the City Attorney's Office.

89. Meetings were held between officers, supervisors, and FSE executives to strategize removal of performers. Officers on scene referenced "orders from the City Attorney," confirming knowledge and participation.

90. The conspiratorial actions, undertaken under color of law, directly injured Plaintiff and others similarly situated in violation of 42 U.S.C. § 1985(3).

91. Plaintiff seeks compensatory and punitive damages, and declaratory relief holding Defendants jointly and severally liable.

# COUNT VIII – NEGLIGENT HIRING, TRAINING, AND SUPERVISION

(State Law and 42 U.S.C. § 1983 – Against the City of Las Vegas and FSE)

92. Plaintiff realleges and incorporates paragraphs 1 through 91.
93. The City and FSE owed a duty to hire, train, and supervise personnel competent in constitutional law and public engagement.
94. They breached that duty by retaining officers and supervisors—including Sergeant Jopalian, Officer S. Scott, Officer C. Bryan, and Hector (FSE Security)—despite repeated complaints and visible misconduct.
95. This failure foreseeably resulted in deprivation of Plaintiff's rights and economic harm.
96. Plaintiff seeks compensatory damages and court-ordered retraining or reassignment of all responsible personnel.

# COUNT IX – INJUNCTIVE AND DECLARATORY RELIEF

97. Plaintiff realleges and incorporates paragraphs 1 through 96.
98. Plaintiff seeks an injunction restraining Defendants from enforcing unconstitutional Fremont Street policies and requiring:

  (a) a public-performer liaison board with elected street-performer representatives;

  (b) guaranteed performer participation during at least one month annually for cultural promotion;

  (c) mandatory constitutional and bias training for all DPS and FSE staff;

  (d) termination or transfer of all officers found to have violated rights; and

  (e) revision of FSE and City ordinances to restore full First-Amendment compliance.

99. Declaratory relief is necessary to clarify performers' rights and prevent continued abuse.

# COUNT X – STATE-LAW TORT CLAIMS

(Negligence, Intentional Infliction of Emotional Distress, and Abuse of Process)

(Against All Defendants)

100.    Plaintiff realleges and incorporates by reference paragraphs 1 through 99 as though fully set forth herein.

101.    In addition to the constitutional violations alleged above, Defendants engaged in conduct constituting tortious wrongdoing under the laws of the State of Nevada.

## Negligence and Gross Negligence

102.    Defendants owed Plaintiff a duty to act with reasonable care in the enforcement of laws, the supervision of personnel, and the regulation of public performance spaces. Nevada law imposes a general duty to avoid foreseeable harm to others through negligent conduct. See Turner v. Mandalay Sports Ent., 124 Nev. 213, 220, 180 P.3d 1172 (2008).

103.    Defendants breached that duty by harassing, threatening, and excluding Plaintiff from public areas without lawful cause, fabricating incident reports, and failing to train or supervise their agents properly. These breaches foreseeably caused Plaintiff emotional distress, economic loss, and reputational injury.

## Intentional Infliction of Emotional Distress (IIED)

104.    Defendants' conduct—including verbal threats, humiliation in public, denial of complaint rights, and retaliatory enforcement—was extreme and outrageous, undertaken with intent to cause emotional distress or with reckless disregard of the probability of causing such distress.

105.    As a direct result, Plaintiff has suffered severe emotional pain, humiliation, anxiety, insomnia, and loss of enjoyment of life. Such conduct satisfies the elements of IIED under Nelson v. City of Las Vegas, 99 Nev. 548, 556, 665 P.2d 1141 (1983) and Star v. Rabello, 97 Nev. 124, 125–26, 625 P.2d 90 (1981).

**Abuse of Process and Malicious Conduct**

106.    Defendants misused their legal authority—including trespass warnings, citations, and fabricated incident slips—for ulterior purposes unrelated to legitimate law enforcement, namely retaliation and suppression of artistic expression.

107.    Under Nevada law, abuse of process occurs when a party "uses legal process primarily to accomplish a purpose for which it was not designed." Posadas v. City of Reno, 109 Nev. 448, 458, 851 P.2d 438 (1993). The retaliatory misuse of enforcement mechanisms described herein satisfies each element of that tort.

108.    Defendants' acts were willful, wanton, and malicious, showing conscious disregard of Plaintiff's rights. Punitive damages are therefore appropriate under Franchise Tax Bd. v. Hyatt ("Hyatt III"), 139 S. Ct. 1485 (2019), recognizing Nevada's strong interest in redressing intentional torts by state actors.

**Damages**

109.    Plaintiff seeks monetary relief jointly and severally against all Defendants, including:

(a) General damages for pain, suffering, humiliation, and loss of livelihood;

(b) Special damages for lost income and professional opportunities;

(c) Punitive damages to deter future misconduct;

(d) Costs of suit and such further relief as the Court deems just and proper.

## COUNT XI – DAMAGES AND GENERAL PRAYER FOR RELIEF

110.    Plaintiff realleges and incorporates by reference paragraphs 1 through 109 as though fully set forth herein.

111.    As a direct and proximate result of Defendants' coordinated, unlawful, and tortious conduct, Plaintiff has suffered and continues to suffer loss of income, reputational harm, humiliation, emotional distress, and deprivation of artistic livelihood.

112.    Defendants' actions were willful, wanton, malicious, and in reckless disregard of Plaintiff's federally and state-protected rights, thereby justifying both compensatory and punitive damages.

**A. Declaratory and Injunctive Relief**

113.    Plaintiff requests that this Court enter a declaratory judgment finding that Defendants'
policies and enforcement practices concerning Fremont Street performers are
unconstitutional under the First, Fourth, and Fourteenth Amendments and unlawful under
Nevada tort law.

114.    Plaintiff further requests that the Court permanently enjoin Defendants, their officers,
employees, agents, and successors from:

(a) enforcing any rule, permit, or directive restricting lawful street performance in a
public forum absent a narrowly tailored, content-neutral justification;

(b) using "special-event" permits, City Attorney orders, or vendor expansions as
pretexts to suppress expressive conduct; and

(c) retaliating against any performer or citizen for engaging in constitutionally
protected expression.

115.    Plaintiff seeks institutional reform requiring the City of Las Vegas, its Department of
Public Safety, the City Attorney's Office, and Fremont Street Experience LLC to:

(a) establish a Street Performer Oversight and Advisory Board including elected
performer representatives;

(b) appoint a Street Performer Liaison Officer;

(c) implement mandatory First Amendment, equal-protection, and bias-training
programs for all DPS and FSE personnel;

(d) terminate or reassign officers or managers who engaged in or tolerated misconduct;

(e) publish an annual public compliance report of enforcement actions and complaints;
and

(f) designate one month each year as "Performer Freedom Month," prioritizing
street-performer access and suspending competing stage shows.

## B. Expungement and Judicial Vacatur of Unlawful Records

116.    Plaintiff requests that the Court order the immediate vacatur and expungement of all
citations, arrests, or criminal cases initiated against street performers under
unconstitutional Fremont Street ordinances or selective-enforcement practices from
January 2023 through the date of judgment.

117.    Plaintiff further seeks an order directing Defendants to purge such records from all
databases and to issue written confirmation to affected performers of full restoration of
status as lawful artists in a public forum.

## C. Monetary Relief

118.    Plaintiff seeks judgment against all Defendants, jointly and severally, for:

(a) Compensatory damages in the amount of $3,500,000 for economic loss, emotional distress, and deprivation of liberty;

(b) Punitive damages in an amount sufficient to punish and deter future misconduct;

(c) Costs of suit and reasonable attorney's fees under 42 U.S.C. § 1988; and

(d) Such further equitable relief as this Court deems just and proper.

## D. Public Accountability and Notice

119.    Plaintiff requests that Defendants issue a formal public apology acknowledging violations and commit to constitutional reform, and that they post permanent signage on Fremont Street recognizing street performers as protected expressive participants under the First Amendment.

120.    Plaintiff prays for all such additional relief—legal, equitable, or declaratory—as the Court deems just, equitable, and necessary to restore the constitutional integrity of Fremont Street and prevent ongoing abuse of municipal power.

---

Respectfully submitted,


ELIAZER D. CHAPMAN

5100 E. Tropicana Ave, Apt. 53A

Las Vegas, NV 89122

Phone: (305) 713-6056

Email: eliazer_76@aol.com

Plaintiff, Pro Se

Date: _____

**CASE OVERVIEW — CALL FOR CHANGE 2025**
*Chapman v. City of Las Vegas, et al.*
U.S. District Court, District of Nevada

**Overview:**
Bronx-born performer **Eliazer D. Chapman** — known professionally as **@chilllllalleyboi_** —
has filed a **$3.5 million federal civil rights and RICO lawsuit** against the **City of Las
Vegas**, **Department of Public Safety**, and **Fremont Street Experience LLC**. The complaint
alleges coordinated harassment, false imprisonment, and the **monopolization of the
Fremont Street pedestrian mall for private profit** at the expense of public access and
artistic freedom.

The action challenges the City's policies that restrict performers' First Amendment rights while
benefiting corporate sponsors and private contractors.

**Full Legal Claims:**
**Count I — Violation of First Amendment Rights:** Suppression of artistic expression in a
public forum (42 U.S.C. §1983).
**Count II — Prior Restraint and Unconstitutional Permit Scheme:** "Special event" closures
used to ban performers (42 U.S.C. §1983).
**Count III — Retaliation for Protected Expression:** Threats, fabricated reports, and verbal
trespasses for engaging in speech (42 U.S.C. §1983).
**Count IV — Unlawful Search, Seizure, and Detention:** Fourth Amendment violations (42
U.S.C. §1983).
**Count V — Due Process and Equal Protection Violations:** Arbitrary and discriminatory
enforcement (Fourteenth Amendment, §1983).
**Count VI — Municipal and Supervisory Liability (Monell):** City and FSE customs and
policies causing systemic violations (42 U.S.C. §1983).
**Count VII — Conspiracy to Violate Civil Rights:** Coordination between FSE, DPS, and City
Attorney's Office (42 U.S.C. §§1983 & 1985(3)).
**Count VIII — Negligent Hiring, Training, and Supervision:** Failure to control misconduct by
officers and staff.
**Count IX — Injunctive and Declaratory Relief:** Court orders to stop unconstitutional
enforcement and reform policies.
**Count X — State-Law Tort Claims:** Negligence, Intentional Infliction of Emotional Distress,
and Abuse of Process.
**Count XI — General Prayer for Relief and Public Accountability:** Declaratory relief,
expungement, ordinance reform, and $3.5 million in damages.

**Requested Structural Reforms and Remedies:**
**1. Creation of a Performer Advisory Board:** Establish a Street Performer Advisory Board
composed of elected performers, City of Las Vegas representatives, and Fremont Street

Experience management. The Board must receive prior notice of all closures, rule changes, or permit restrictions affecting performers.

**2. Monthly Performer Showcase and Tourism Integration:** Declare one full month each year as "Performer Appreciation Month," ensuring no corporate concerts displace local acts.

**3. Fair Access to Commercial Opportunities:** Permit performers to operate a shared kiosk for selling legitimate merchandise in compliance with *Bery v. City of New York, 97 F.3d 689 (2d Cir. 1996).*

**4. Spatial and Safety Reform:** Expand restrictive "circle rules" to safely accommodate acrobatic and dance acts consistent with *Ward v. Rock Against Racism, 491 U.S. 781 (1989).*

**5. Transparency and Training Requirements:** Mandate annual constitutional and performer-rights training for all enforcement personnel, with public certification records.

**6. Personnel Reform and Accountability:** Immediate disciplinary action for repeat violators and formal apology from the City Attorney's Office.

**7. Data Correction and Restoration of Rights:** Vacate and expunge all performer-related citations, arrests, or trespasses issued since 2023 under §11.68.107 or similar provisions.

**8. Public Accountability and Community Reconciliation:** Require annual transparency hearings and published enforcement reports tracking progress on performer rights.

**Relief Sought:**
- $3.5 million in compensatory and punitive damages.
- Injunctive relief halting unconstitutional and monopolistic restrictions.
- Declaratory judgment affirming performers' rights in public spaces.
- Implementation of the above structural reforms.

**Media Contact:**
Eliazer D. Chapman
Plaintiff, Pro Se | Performer & Founder, *Acrobat Allstars*
5100 E. Tropicana Ave, Apt. 53A
Las Vegas, NV 89122
(305) 713-6056
eliazer_76@aol.com
Instagram: @chilllllalleyboi_

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA


ELIAZER D. CHAPMAN,

Plaintiff, Pro Se,

v.

CITY OF LAS VEGAS; CITY OF LAS VEGAS DEPARTMENT OF PUBLIC SAFETY; CITY
ATTORNEY'S OFFICE; FREMONT STREET EXPERIENCE LLC; SERGEANT JOPALIAN;
OFFICER C. BRYAN; OFFICER S. SCOTT; SERGEANT HECTOR (FSE SECURITY);
STEVE [LNU]; UNKNOWN FSE SUPERVISOR; AND DOES 1–30, INCLUSIVE,

Defendants.


Case No.: _____


# EXHIBIT INDEX


**Exhibit**

| | |
|---|---|
| A | Postal Receipts and Tracking Confirmations |
| B | Verbal Trespass Warning (No Written Record) |
| C | Trespass Enforcement & Officer Conduct |
| D | Citation Dated October 2, 2025 |
| E | FSE Special Event Permits (October 17–19 & October 31–November 1, 2025) |
| F | Fabricated Incident Report (C. Bryan) |
| G | Permit Language Limiting Performers |
| H | Officer Intimidation and Retaliation |
| I | Selective Enforcement and Noise Manipulation |
| J | Officer Statements and Direct Orders |
| K | Trespass and Performer Removal (October 18, 2025) |
| L | Public Records and Body-Worn Camera Request Notice |

**Exhibit**

M      City Attorney Directives & Collusion

N      Off-Axis Show Contract & FSE Competitive Suppression

O      Performer Equality and Community Reform Proposal

**CASE OVERVIEW — CALL FOR CHANGE 2025**
*Chapman v. City of Las Vegas, et al.*
U.S. District Court, District of Nevada

**Overview:**
Bronx-born performer **Eliazer D. Chapman** — known professionally as **@chilllllalleyboi_** — has filed a **$3.5 million federal civil rights and RICO lawsuit** against the **City of Las Vegas**, **Department of Public Safety**, and **Fremont Street Experience LLC**. The complaint alleges coordinated harassment, false imprisonment, and the **monopolization of the Fremont Street pedestrian mall for private profit** at the expense of public access and artistic freedom.

The action challenges the City's policies that restrict performers' First Amendment rights while benefiting corporate sponsors and private contractors.

**Full Legal Claims:**
**Count I — Violation of First Amendment Rights:** Suppression of artistic expression in a public forum (42 U.S.C. §1983).
**Count II — Prior Restraint and Unconstitutional Permit Scheme:** "Special event" closures used to ban performers (42 U.S.C. §1983).
**Count III — Retaliation for Protected Expression:** Threats, fabricated reports, and verbal trespasses for engaging in speech (42 U.S.C. §1983).
**Count IV — Unlawful Search, Seizure, and Detention:** Fourth Amendment violations (42 U.S.C. §1983).
**Count V — Due Process and Equal Protection Violations:** Arbitrary and discriminatory enforcement (Fourteenth Amendment, §1983).
**Count VI — Municipal and Supervisory Liability (Monell):** City and FSE customs and policies causing systemic violations (42 U.S.C. §1983).
**Count VII — Conspiracy to Violate Civil Rights:** Coordination between FSE, DPS, and City Attorney's Office (42 U.S.C. §§1983 & 1985(3)).
**Count VIII — Negligent Hiring, Training, and Supervision:** Failure to control misconduct by officers and staff.
**Count IX — Injunctive and Declaratory Relief:** Court orders to stop unconstitutional enforcement and reform policies.
**Count X — State-Law Tort Claims:** Negligence, Intentional Infliction of Emotional Distress, and Abuse of Process.
**Count XI — General Prayer for Relief and Public Accountability:** Declaratory relief, expungement, ordinance reform, and $3.5 million in damages.

**Requested Structural Reforms and Remedies:**
**1. Creation of a Performer Advisory Board:** Establish a Street Performer Advisory Board composed of elected performers, City of Las Vegas representatives, and Fremont Street

Experience management. The Board must receive prior notice of all closures, rule changes, or permit restrictions affecting performers.

**2. Monthly Performer Showcase and Tourism Integration:** Declare one full month each year as "Performer Appreciation Month," ensuring no corporate concerts displace local acts.

**3. Fair Access to Commercial Opportunities:** Permit performers to operate a shared kiosk for selling legitimate merchandise in compliance with *Bery v. City of New York, 97 F.3d 689 (2d Cir. 1996).*

**4. Spatial and Safety Reform:** Expand restrictive "circle rules" to safely accommodate acrobatic and dance acts consistent with *Ward v. Rock Against Racism, 491 U.S. 781 (1989).*

**5. Transparency and Training Requirements:** Mandate annual constitutional and performer-rights training for all enforcement personnel, with public certification records.

**6. Personnel Reform and Accountability:** Immediate disciplinary action for repeat violators and formal apology from the City Attorney's Office.

**7. Data Correction and Restoration of Rights:** Vacate and expunge all performer-related citations, arrests, or trespasses issued since 2023 under §11.68.107 or similar provisions.

**8. Public Accountability and Community Reconciliation:** Require annual transparency hearings and published enforcement reports tracking progress on performer rights.

**Relief Sought:**
• $3.5 million in compensatory and punitive damages.
• Injunctive relief halting unconstitutional and monopolistic restrictions.
• Declaratory judgment affirming performers' rights in public spaces.
• Implementation of the above structural reforms.

**Media Contact:**
Eliazer D. Chapman
Plaintiff, Pro Se | Performer & Founder, *Acrobat Allstars*
5100 E. Tropicana Ave, Apt. 53A
Las Vegas, NV 89122
(305) 713-6056
eliazer_76@aol.com
Instagram: @chilllllalleyboi_