# UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

---

ELIAZER D. CHAPMAN,

Plaintiff, Pro Se,

v.

```
FILED          RECEIVED
ENTERED        SERVED ON
        COUNSEL/PARTIES OF RECORD

        NOV 12 2025

    CLERK US DISTRICT COURT
      DISTRICT OF NEVADA
BY:         AMMi        DEPUTY
```

CITY OF LAS VEGAS; DEPARTMENT OF PUBLIC SAFETY;

CITY ATTORNEY'S OFFICE; FREMONT STREET EXPERIENCE LLC;

SERGEANT JOPALIAN; OFFICER C. BRYAN; OFFICER S. SCOTT;

SERGEANT HECTOR; STEVE [LNU]; and DOES 1–30,

Defendants.

2:25-cv-02227-NJK

Case No.: _____

---

# EMERGENCY VERIFIED MOTION FOR PRELIMINARY INJUNCTION AND [PROPOSED] ORDER

(Fed. R. Civ. P. 65; 28 U.S.C. § 1746)

## I. INTRODUCTION

Plaintiff Eliazer D. Chapman, appearing pro se, respectfully moves this Court for a Preliminary Injunction under Rule 65 of the Federal Rules of Civil Procedure to prevent ongoing and escalating violations of his constitutional rights by the City of Las Vegas, its Department of Public Safety ("DPS"), the City Attorney's Office, and Fremont Street Experience LLC ("FSE"), along with their officers, agents, and employees.

**This Motion is supported by and incorporates by reference the factual allegations and claims set forth in Plaintiff's Verified Complaint for Declaratory and Injunctive Relief filed concurrently in this action.**

Since at least 2023, Defendants have engaged in a coordinated campaign of enforcement actions that suppress, restrict, and retaliate against Plaintiff's lawful street performances on Fremont Street — one of the City's most visible public forums. These practices include the use of vague and contradictory permit rules, retaliatory citations, and discriminatory signage, all of which have chilled protected expression under the First and Fourteenth Amendments to the United States Constitution.

The American Civil Liberties Union of Nevada ("ACLU") and the City previously reached understandings affirming that street performance on Fremont Street constitutes constitutionally protected expressive conduct. However, those commitments have eroded. The current enforcement regime directly contradicts prior agreements and demonstrates that informal measures have failed to preserve performers' rights.

Because the City and FSE now enforce an unclear, inconsistent, and arbitrarily applied set of "rules" that even their own officers cannot uniformly interpret, performers lack fair notice and are subject to unpredictable punishment. The result is an unconstitutional system that undermines both due process and freedom of expression.

Plaintiff seeks immediate injunctive relief to (1) halt the unlawful enforcement actions; (2) protect all performers from retaliation or arbitrary detention; (3) compel oversight, transparency, and neutral public messaging; and (4) ensure Fremont Street remains open as a true public forum for artistic and expressive conduct.

## II. FACTUAL BACKGROUND

### A. Pattern of Suppression and Commercial Domination

Fremont Street has long been one of the nation's most visible public forums for live art, acrobatics, music, and spontaneous performance. In recent years, however, the City of Las Vegas, its Department of Public Safety ("DPS"), and Fremont Street Experience LLC ("FSE") have erected a confusing and discriminatory network of "performance-circle" rules, permits, and ad-hoc event restrictions that suppress independent expression while privileging corporate entertainment. Their combined practices — selective enforcement, retaliation, and commercial obstruction — have destroyed equal access to the public forum and chilled protected artistic conduct.

1. Commercial Domination and Displacement of Performers.

    FSE routinely hires corporate stage acts that coincide with the hours and spaces historically used by street performers. These sponsored shows employ high-power lighting and sound systems that drown out independent artists or physically block their audiences. FSE then cites the very congestion and noise it created as justification for ejecting those artists. By doing so, the City and FSE have replaced spontaneous street art with curated, commercial programming, violating the First Amendment's guarantee of viewpoint neutrality.

2. Obstruction by Vendors, Kiosks, and Unregulated Occupants.

    Defendants permit kiosks, vendor booths, security posts, and stationary encampments to occupy or intrude upon designated performance zones. Security staff, vendors, and other personnel often walk directly through ongoing performances, interrupting acts and endangering both artists and spectators. The cumulative effect is the physical elimination of expressive space under the guise of "management."

3. Retaliatory and Vague Enforcement.

    Enforcement officers and FSE personnel apply contradictory, shifting standards. One day they rely on a city ordinance, the next on an unpublished FSE "policy," or on a temporary "special-event" permit that no performer has ever seen. Plaintiff has been warned or cited for "obstruction" despite full compliance with all publicly available

rules. Even supervisors admit that "no one really knows what the rules are." This lack of clarity renders the entire regime unconstitutionally vague and invites arbitrary enforcement.

4. "Circle Zones" and the Collapse of Equal Access.

The "circle" system confines each performer to a painted ring roughly six feet in diameter and requires rotation every two hours. These spaces cannot accommodate group or acrobatic acts, which need motion, teamwork, and safe clearance. Because Plaintiff's acrobatic ensemble requires coordinated flips and stunts, he is effectively barred from performing during the evening hours when enforcement intensifies and amplified FSE stage shows dominate. The permit system is eroded and obsolete, leaving no reliable way to secure lawful access.

The circle rule is also physically unworkable. Performers executing flips, jumps, or dynamic tricks naturally land beyond a six-foot ring. Many have been cited, detained, or even arrested for momentary and unavoidable movement during legitimate routines. Rigid enforcement of a painted boundary transforms ordinary artistic motion into a punishable act. It treats artists as stage props rather than citizens engaged in expression. By criminalizing the very movement integral to performance, the system is overbroad, unreasonable, and incompatible with First Amendment and due-process principles. Performers now refrain from expressive motion altogether, feeling "like caged animals rather than artists."

5. Discriminatory Messaging and Hostile Atmosphere.

FSE and City contractors have displayed signage depicting acrobats — often with dreadlocks — crossed out beneath prohibition symbols. This imagery conveys a targeted and disparaging message toward specific artistic and cultural identities and constitutes viewpoint discrimination. Simultaneously, FSE increases its stage-music volume precisely when independent artists begin performing, deliberately overpowering them and forcing shows to end prematurely.

6. Failure of Prior Reforms and Need for Public Notice.

The ACLU of Nevada previously reached understandings with the City acknowledging that Fremont Street is a public forum protected by the First Amendment. Those commitments have been ignored. Because even enforcement officers and FSE management misunderstand the governing standards, Plaintiff requests that Defendants be required to post public signage at every Fremont Street entrance stating that Chapman v. City of Las Vegas et al. is an active federal case challenging the restrictions and that street performance remains protected expressive conduct while this case is pending. Such notice will deter retaliation, promote lawful compliance, and inform both the public and enforcement personnel of ongoing judicial oversight.

7. Lack of Timely Disclosure and Need for Immediate Oversight.

    Defendants claim to provide event and enforcement updates only through an online registration portal. Because Plaintiff does not perform during the 3 p.m. rotation —the only period the City registers performers—he is excluded from receiving advance notice of closures or "special-event" restrictions. Artists often learn of new prohibitions only upon arrival after investing time and expense to reach the venue. This system denies fair notice and renders compliance impossible. To prevent further harm, there must be immediate on-site oversight and communication, including appointment of a Court-approved Performer Oversight Liaison authorized to monitor enforcement, receive complaints in real time, and report directly to the Court. Only independent, active supervision can deter ongoing retaliation and ensure performers are informed of lawful conditions before enforcement occurs.

## III. LEGAL STANDARD

A preliminary injunction is an extraordinary but essential remedy designed to prevent irreparable harm before a final judgment. Fed. R. Civ. P. 65. The Court may issue such relief when the moving party establishes that:

1. There is a likelihood of success on the merits;
2. The movant is likely to suffer irreparable harm absent the injunction;
3. The balance of equities tips in the movant's favor; and
4. The injunction is in the public interest.

Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008).

Under the Ninth Circuit's sliding-scale test, a plaintiff may also obtain preliminary relief by showing serious questions going to the merits and a balance of hardships that tips sharply in the plaintiff's favor, so long as the other elements are satisfied. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).

When the alleged injury involves First Amendment freedoms, courts presume both irreparable harm and that granting an injunction serves the public interest. Elrod v. Burns, 427 U.S. 347, 373 (1976). This presumption applies with special force where government officials have chilled expressive conduct through arbitrary or retaliatory enforcement. Here, Plaintiff alleges ongoing suppression of protected artistic performance in a traditional public forum, placing this matter squarely within that First Amendment presumption.

When the alleged injury involves First Amendment freedoms, courts presume both irreparable harm and the public interest in favor of the movant. Elrod v. Burns, 427 U.S. 347, 373 (1976). This presumption applies with special force where government officials have chilled expressive conduct through arbitrary or retaliatory enforcement.

# IV. ARGUMENT

## A. Plaintiff Is Likely to Succeed on the Merits

### 1. Defendants' Restrictions Are Content- and Viewpoint-Based

The City of Las Vegas and Fremont Street Experience LLC selectively suppress independent artists while promoting corporate-sponsored entertainment. Fremont Street is a traditional public forum; government and its contractors may regulate time, place, and manner, but only if restrictions are content-neutral, narrowly tailored, and leave open ample alternative channels for expression. Ward v. Rock Against Racism, 491 U.S. 781 (1989).

Here, the restrictions are not neutral. By hiring and amplifying commercial acts while excluding or drowning out independent performers, Defendants favor one type of expression over another. Paid shows that advertise private sponsors are allowed to occupy prime space and use amplified sound; independent performers are cited or forced to move. This is classic viewpoint discrimination condemned in Reed v. Town of Gilbert, 576 U.S. 155 (2015). The First Amendment forbids government from choosing which art, sound, or message may be heard in a public forum.

Defendants have gone further by permitting and displaying signage that depicts performers—particularly those with dreadlocks—under red prohibition symbols, and by using red "Tipping Is Optional" warnings that imply criminality. Such imagery stigmatizes specific cultural expression and deters the public from supporting artists. These are forms of content- and identity-based discrimination incompatible with First Amendment protections.

## 2. The "Circle" and Permit Schemes Are Unconstitutionally Vague and Overbroad

A regulation is void for vagueness when "persons of ordinary intelligence must guess at its meaning and differ as to its application." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). Here, even enforcement officers admit that no one truly knows what the current rules are. Standards change from day to day depending on who is on duty or what FSE event is scheduled. This uncertainty invites arbitrary enforcement and chills protected speech.

The "circle" system further criminalizes ordinary movement inherent to acrobatic art. Performers executing flips or coordinated routines inevitably cross a painted line only six feet wide and are then cited or detained. That rule is overbroad, punishing constitutionally protected expression under the guise of "safety." See Kolender v. Lawson, 461 U.S. 352 (1983) (invalidating law permitting arbitrary enforcement). By confining dynamic performance to a space too small to permit safe expression, the City effectively bans entire categories of performance and violates both the First and Fourteenth Amendments.

## 3. Defendants' Conduct Violates Equal Protection and Due Process

Equal-protection principles forbid officials from enforcing laws selectively or with bias. Defendants apply restrictions against independent artists while granting exceptions to commercial vendors and paid FSE performers. They also misclassify performers as "non-performers" on citations, misrepresenting lawful expressive conduct as unrelated commercial activity. This falsification denies performers fair process and conceals the true scope of enforcement abuses.

Defendants further fail to provide timely or accessible notice of "special-event" closures, leaving unregistered performers—such as Plaintiff, who does not perform after 3 p.m. due to circle limitations—without information until enforcement begins. This lack of notice and deliberate misrepresentation violate procedural due process by denying performers a fair opportunity to comply with the law. See Mathews v. Eldridge, 424 U.S. 319 (1976).

## 4. Defendants' Actions Exceed Their Lawful Authority

Fremont Street Experience LLC frequently tells performers and visitors that it "owns" Fremont Street, yet it does not. FSE operates only under an operating and management agreement with the City of Las Vegas; the property remains a public right-of-way subject to full constitutional

protections. By acting as a private property owner—issuing "trespass" threats, dictating who may perform, and installing prohibition signage—FSE and the City have exceeded their lawful authority and violated the public-forum doctrine established in United States v. Grace, 461 U.S. 171 (1983). Neither FSE nor the City may convert public space into a privately controlled zone that censors disfavored speech.

### 5. The Need for Immediate Judicial Oversight

Prior civil-rights efforts, including those involving the ACLU of Nevada, did not authorize or approve the current restrictions. The City and FSE implemented these policies unilaterally and without oversight, and previous voluntary reforms have failed. Only an independent Court-approved Performer Oversight Liaison can provide real-time accountability and ensure that future enforcement complies with constitutional standards. See Melendres v. Arpaio, 695 F.3d 990 (9th Cir. 2012) (affirming appointment of court monitor where ongoing constitutional violations persisted).

## B. Plaintiff Will Suffer Irreparable Harm Without Relief

The loss of First Amendment freedoms, even briefly, constitutes irreparable injury as a matter of law. Elrod v. Burns, 427 U.S. 347, 373 (1976). Every citation, warning, or threat chills Plaintiff's expression, deprives him of income, and damages his reputation as a professional acrobat. Other performers have lost housing or spent extended periods in jail on charges arising solely from performance. Monetary compensation cannot restore lost performances or undo the stigma and economic damage caused by unconstitutional arrests. The harm is daily, continuing, and irreparable.

## C. The Balance of Equities Tips Decisively Toward Plaintiff

Defendants suffer no cognizable injury from being required to obey the Constitution. By contrast, Plaintiff faces ongoing threats of arrest, exclusion from public space, and destruction of his livelihood. When one party seeks only to halt unconstitutional conduct, the equities always favor granting relief. Ariz. Dream Act Coal. v. Brewer, 757 F.3d 1053 (9th Cir. 2014).

## D. The Public Interest Strongly Supports the Injunction

Preserving expressive freedom in a public forum is always in the public interest. Sammartano v. First Judicial Dist. Court, 303 F.3d 959 (9th Cir. 2002). Fremont Street's identity and economy depend on its artists as much as its lights. Judicial intervention will reaffirm that the First Amendment protects all voices—not only those amplified by corporate sponsorship—and will restore community trust in lawful governance.

### E. Summary

Plaintiff has demonstrated:

1. A clear likelihood of success on the merits;
2. Irreparable constitutional injury;
3. Equities that weigh heavily in his favor; and
4. A compelling public interest in maintaining open, transparent access to Fremont Street.

Under Winter v. Natural Res. Def. Council and Alliance for the Wild Rockies v. Cottrell, the Court should grant the requested preliminary injunction and implement immediate oversight to prevent further harm.

Because Plaintiff seeks only to enjoin Defendants from continuing unconstitutional practices and to preserve Fremont Street as a functioning public forum, this Motion satisfies every element of the Winter test.

# V. REQUESTED RELIEF / [PROPOSED] ORDER GRANTING PRELIMINARY INJUNCTION (Updated)

For the reasons stated above and in Plaintiff's Verified Declaration of Emergency, Plaintiff respectfully requests that this Court enter the following Order under Rule 65:

## 1. Enforcement Freeze and Performer Protection

Defendants City of Las Vegas, Department of Public Safety, City Attorney's Office, and Fremont Street Experience LLC, together with their agents, contractors, and employees, are temporarily restrained and enjoined from enforcing any policy, ordinance, or permit scheme that prohibits or unreasonably restricts lawful street performance and expressive conduct on Fremont Street.

- All citations issued to performers shall be treated solely as civil infractions, not criminal offenses, and any records misrepresenting performers as "non-performers" shall be corrected and removed from enforcement databases.
- No performer shall be detained, handcuffed, transported, or booked for conduct arising solely from expressive activity.
- Officers and security personnel shall issue any citations courteously on site and permit the performer to continue or depart peacefully.

## 2. Freedom of Performance and Public Access

Pending final adjudication, all lawfully registered and qualified performers shall be permitted to perform outside designated "circle" zones so long as they do not obstruct pedestrian or emergency passage.

- Defendants shall reduce or relocate kiosks, vendor booths, security posts, and commercial obstructions that limit performance areas or block traditional expressive spaces.
- No vendor, FSE security member, or other non-performer shall enter or walk through an active performance space except in cases of emergency.
- FSE shall refrain from hiring or amplifying corporate acts in a manner that overpowers independent performers or forces them to cease performance.
- Defendants are barred from leasing or reserving areas historically used for street performance for purely commercial activity while this Order remains in effect.

Case 2:25-cv-02227-CDS-NJK    Document 3    Filed 11/12/25    Page 11 of 17

## 3. Immediate Oversight and Transparency

Within 30 days of this Order, Defendants shall jointly designate a Performer Oversight Liaison, subject to Court approval, who will:

1. Monitor enforcement interactions between performers and officers in real time;
2. Receive and log performer complaints on site; and
3. File monthly compliance reports with the Court.

All officers and security staff engaged with performers shall activate body-worn cameras during each interaction, and Defendants shall preserve all recordings for discovery or judicial review.

## 4. Signage and Public Notice Reform

- Defendants shall post public signs at each entrance to the Fremont Street Experience stating that:

    – this case, Chapman v. City of Las Vegas et al., is an active federal action challenging current performance restrictions; and

    – street performance is protected expressive conduct under the First Amendment while this litigation is pending.

- All signage depicting performers crossed out, under prohibition symbols, or presenting "tipping is optional" messages in a manner that appears punitive or criminalizing shall be removed or covered within 14 days of this Order.
- Replacement signs shall be neutral and informational only and shall not contain imagery suggesting that performance or tipping is illegal or discouraged.

## 5. Anti-Retaliation and Evidence Preservation

Defendants and their agents are prohibited from any retaliation, surveillance, selective enforcement, or intimidation of Plaintiff or other performers exercising protected rights.

They shall preserve all body-camera footage, incident reports, emails, and internal communications related to Fremont Street performance enforcement from January 2023 to present.

### 6. Temporary Reassignment or Removal of Involved Personnel

To maintain neutrality and prevent retaliation during the pendency of this case, the Court may order that Sergeant Hector, Sergeant Jopalian, Officer C. Bryan, Officer S. Scott, and any other named enforcement personnel be temporarily reassigned or removed from Fremont Street enforcement duties until the preliminary-injunction hearing is concluded.

This limited measure will preserve the status quo, prevent further harassment or bias, and ensure fair and constitutional enforcement while the Court considers the merits of this motion.

### 7. Policy Stability and Public Accountability

- Defendants shall not adopt or enforce any new performance-related rules without providing advance notice to this Court and an opportunity for Plaintiff to object.
- The City of Las Vegas and FSE shall publicly acknowledge that Fremont Street remains a public forum owned by the City and managed under an operating agreement, and that performers retain full constitutional rights thereon.
- The City and FSE are encouraged to develop policies recognizing the cultural, economic, and community value of street performers and to consult with the performer community before making any further changes.

### 8. Duration and Enforcement

This injunction shall remain in effect pending further Order of the Court or final resolution of this action.

Any violation of this Order may be punishable as civil or criminal contempt of court.

IT IS SO ORDERED.

UNITED STATES DISTRICT JUDGE

DATED this ___ day of _____, 2025.

# VERIFIED DECLARATION OF EMERGENCY

I, Eliazer D. Chapman, declare as follows:

1. I continue to perform lawfully on Fremont Street as part of my livelihood and artistic expression. I have never performed after 3 p.m. because the City's "circle zone" restrictions make it physically impossible for my acrobatic group acts to perform safely or fairly. My crew cannot fit within the small circles, and I have chosen not to risk arrest or citation by attempting to perform in those conditions. This limitation has directly reduced my income and opportunities to perform, despite my full compliance with all published rules.
2. Enforcement by the City of Las Vegas and Fremont Street Experience ("FSE") has become arbitrary and fabricated. Officers and security personnel have issued or threatened false and misrepresented citations, recording performers as "non-performers" even when we were clearly engaged in expressive performance. These falsified records distort the truth and are used to justify enforcement actions and criminalize lawful expression. The practice deprives performers of fair notice, damages reputations, and erases the factual basis for defending against charges.
3. Kiosks, vendor booths, and private security posts occupy nearly every designated performance space, leaving performers without lawful or safe areas to work. Meanwhile, homeless individuals and other unregulated occupants are allowed to remain in those same spaces even though posted rules forbid it. The overall enforcement is inconsistent and discriminatory—performers are targeted while other violations are ignored.
4. Even attempting to assert or discuss constitutional rights results in confrontation or punishment. Performers, including myself, have been threatened with trespass or arrest simply for asking questions or explaining that street performance is protected expressive activity. This has produced an atmosphere of intimidation that silences performers and chills artistic expression across Fremont Street.
5. In addition to these enforcement practices, FSE and its contractors have posted and displayed signs depicting cartoon-style characters with dreadlocks crossed out under prohibition symbols. My performance group is the only group of artists on Fremont Street

known for having dreadlocks and for incorporating that image into our acrobatic and musical identity. These signs send a targeted and discriminatory message that our appearance and cultural expression are unwelcome. They have caused humiliation, loss of audience support, and further hostility from security and police officers. This visual messaging reinforces a pattern of selective enforcement and viewpoint discrimination that violates the First and Fourteenth Amendments.

6. FSE and City signage also displays warnings stating that "Tipping Is Optional," sometimes accompanied by a red prohibition circle-and-slash symbol over performer icons. Although it is appropriate to inform the public that tipping is voluntary, the use of this prohibition imagery makes it appear as though performing or accepting tips is forbidden or criminal. This misleads visitors, discourages lawful tipping, and harms the professional image and reputation of Fremont Street performers who rely on audience support for income.

7. Neither the American Civil Liberties Union of Nevada (ACLU) nor any other civil-rights organization ever approved or agreed to these current signs or enforcement practices. The ACLU's prior involvement with the City was limited to ensuring that performers retained their constitutional rights to use Fremont Street as a public forum. The current signage and enforcement methods were implemented unilaterally by the City and FSE without public consultation or oversight. FSE frequently tells performers and visitors that it "owns" Fremont Street, but in reality it does not own the property—it merely manages it under a conservatorship and operating agreement with the City of Las Vegas. Fremont Street therefore remains public space fully subject to the protections of the United States Constitution. The City and FSE's misrepresentation of ownership has enabled them to claim powers they do not legally possess and to continue violating performers' rights.

8. The consequences of these policies have been devastating. Several performers have lost their homes or been evicted because they could not earn income while detained or after being wrongfully charged. Some have spent thirty days or more in jail on charges that arose solely from performing or exercising protected speech. These arrests and prosecutions destroy livelihoods and create lasting harm that cannot be remedied by money damages.

9. Because of the ongoing pattern of retaliation and intimidation, I respectfully request that this Court order the temporary reassignment or removal from Fremont Street enforcement duties of the specific officers and FSE security personnel named in this action—Sergeant Hector, Sergeant Jopalian, Officer C. Bryan, and Officer S. Scott—until the preliminary-injunction hearing is concluded. This temporary measure would prevent further harassment or bias, preserve the status quo, and ensure that enforcement on Fremont Street remains neutral and constitutionally compliant while the Court considers this motion.

10. Each day that these unconstitutional practices continue causes immediate and irreparable harm to my livelihood, safety, and constitutional rights, and to the rights of every performer who depends on Fremont Street as a public forum for artistic expression. The threat of arrest and retaliation is ongoing and real. I submit this Emergency Verified Motion not only on my own behalf but also to protect the rights of all street performers who depend on Fremont Street for their art and survival.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___ day of _____, 2025, at Las Vegas, Nevada.

/s/ Eliazer D. Chapman

Eliazer D. Chapman

Plaintiff Pro Se

## VI. VERIFICATION AND DECLARATION UNDER PENALTY OF PERJURY

I, Eliazer D. Chapman, am the Plaintiff in the above-captioned action. I have read the foregoing Verified Motion for Preliminary Injunction and Proposed Order, and I declare that the factual statements contained therein are true and correct to the best of my knowledge, information, and belief.

I make this verification under penalty of perjury pursuant to 28 U.S.C. § 1746, acknowledging that false statements may subject me to sanctions or prosecution for perjury.

Executed on this _____ day of _____, 2025, at Las Vegas, Nevada.

/s/ Eliazer D. Chapman

Eliazer D. Chapman

5100 E. Tropicana Avenue Apt 53A

Las Vegas, NV 89122

(305) 713-6056

eliazer_76@aol.com

Plaintiff, Pro Se

# CERTIFICATE OF SERVICE

I hereby certify that on this ___ day of _____, 2025, I served a true and correct copy of the foregoing Verified Motion for Preliminary Injunction and Proposed Order by depositing it in the United States Mail, first-class postage prepaid, addressed as follows:

City of Las Vegas – Office of the City Attorney

495 S. Main Street, Sixth Floor

Las Vegas, NV 89101

Fremont Street Experience LLC

c/o CT Corporation System, Registered Agent

701 S. Carson Street, Suite 200

Carson City, NV 89701

/s/ Eliazer D. Chapman

Eliazer D. Chapman, Plaintiff Pro Se