JEFFRY M. DOROCAK
City Attorney
Nevada Bar No. 13109
By: MICHELLE DI SILVESTRO ALANIS
Deputy City Attorney
Nevada Bar No. 10024
495 South Main Street, Sixth Floor
Las Vegas, NV 89101
(702) 229-6629
(702) 386-1749 (fax)
Email: malanis@lasvegasnevada.gov
Attorneys for CITY OF LAS VEGAS

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ELIAZER D. CHAPMAN,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>CITY OF LAS VEGAS; CITY OF LAS VEGAS DEPARTMENT OF PUBLIC SAFETY; CITY ATTORNEY'S OFFICE; FREMONT STREET EXPERIENCE LLC; SERGEANT JOPALIAN; OFFICER C. BRYAN; OFFICERS. SCOTT; SERGEANT HECTOR (FSE SECURITY); STEVE [LNU], PRESIDENT OF FREMONT STREET EXPERIENCE; UNKNOWN FSE SUPERVISOR (DECIBEL-METER TAMPERING AND RETALIATION); AND DOES 1-30, INCLUSIVE,<br><br>　　　　　　Defendant. | CASE NO. 2:25-cv-2227-CDS-NJK |

## CITY OF LAS VEGAS' MOTION TO DISMISS

Defendants CITY OF LAS VEGAS; CITY OF LAS VEGAS DEPARTMENT OF PUBLIC SAFETY; CITY ATTORNEY'S OFFICE ("City"), through their attorneys of record, Jeffry M. Dorocak, City Attorney, and Michelle Di Silvestro Alanis, Deputy City Attorney, move to dismiss Plaintiff's Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6). Dismissal is warranted because Plaintiff does not state a claim upon which relief can be granted.

This motion is based upon the pleadings and papers on file herein, the following points and authorities, and any oral argument that the Court may entertain.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.

3

## INTRODUCTION

4

Plaintiff Eliazer D. Chapman filed this civil rights action against Defendants City of Las

5

Vegas, Department of Public Safety and City Attorney's Office (collectively "City"), Sergeant

6

Jopalian, Officer Bryan, and Officer Scott, (collectively "DPS Officers").[1] Plaintiff's 120

7

paragraph complaint asserts eleven causes of action under 42 U.S.C. 1983, 1985, 1988, Monell,

8

civil Rico and multiple state law tort theories. The allegations are diffuse, group all defendants

9

together and are largely conclusory. Even taking factual allegations as true where required,

10

Plaintiff fails to state any claim upon which relief can be granted. Plaintiff failed to plead a viable

11

Monell policy, practice or custom with non-conclusory facts, no cognizable RICO "Enterprise,"

12

"racketeering activity," or pattern as required by 18 USC 1961-1964; lack of standing and ripeness

13

for the requested structural and injunctive relief, multiple claims are barred by doctrines such as

14

prosecutorial immunity, qualified immunity, an discretionary function immunity and state law

15

claims that are either not adequately pled or barred by statutory immunities and procedural

16

requirements. Under *Twombly* and *Iqbal,* labels, conclusions, and formulaic recitations of elements

17

are not enough. Because Plaintiff does not allege facts that make his federal claims plausible and

18

most of his state claims are barred, Plaintiff's Complaint should be dismissed.

19

## II.

20

## ALLEGED FACTS

21

Plaintiff filed his Complaint alleging causes of action for: (1) Violation for First

22

Amendment Rights: Freedom of Speech and Exp0ression; (2) Prior Restraint and Unconstitutional

23

Permit Scheme; (3) Retaliation for Protected Expression; (4) Unlawful Search, Seizure, and

24

Detention; (5) Deprivation of Due Process and Equal Protection; (6) Municipal and Supervisory

25

Liability Under Monell; (7) Conspiracy to Violate Civil Rights; (8) Negligent Hiring Training and

26

Supervision; (9) Injunctive and Declaratory Relief; (10) State Law Tort Claims (Negligence,

27

28

---

[1] As far as the City is aware, Plaintiff has not served the co-defendant DPS Officers.

Intentional Infliction of Emotional Distress and Abuse of Process) and (11) Prayer for Relief.. *See* ECF No. 1 generally.

Plaintiff, a street performer, alleges Defendants engaged in "intimidation, selective enforcement, and unlawful restraint" on Fremont Street "since early 2023 and continuing through November 6, 2025." *See* ECF No. 1 at ¶3. He claims the City of Las Vegas, its Department of Public Safety (DPS), the City Attorney's Office, and Fremont Street Experience LLC (FSE) "coordinated and ratified" acts allegedly violating the First, Fourth, and Fourteenth Amendments. *Id.* at ¶4. He seeks declaratory and injunctive relief, "structural reform," compensatory and punitive damages totaling $3,500,000, and attorneys' fees.

Plaintiff alleges FSE "operates the pedestrian mall and coordinates enforcement with City Marshals, acting under color of state law." *Id.* at ¶11. He further alleges anecdotal interactions on October 17–19, October 31–November 1, and November 6, 2025, including an asserted "verbal trespass," an incident number "25-62054," a statement about body-worn cameras, and directions to keep hands visible. *Id.* at ¶¶ 27-36. He also claims a permit stated "Street performers are not authorized to participate in this event" for October 31–November 1, 2025. *Id.*

Plaintiff alleges Sgt. Jopalian told the officers that if Plaintiff interferes with officers conducting business they should "write obstruction and take him in.". Plaintiff further alleged this statement demonstrates retaliatory intent and proof of a municipal policy under Monell. *Id.* at 37-38

**III.**

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). While a pleading generally need not contain detailed allegations, it must allege sufficient facts to raise a right to relief above the speculative level. *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Id.* Rather, to

survive a motion to dismiss, a complaint must plead "enough facts to state a claim for relief that is plausible on its face." *Id.* at 570. Though the party opposing a 12(b)(6) motion to dismiss is given the benefit of the doubt in that its factual allegations are accepted as true, a court will not assume the truth of legal conclusions merely because the plaintiff casts them in the form of factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, in relevant part:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

Dismissal is proper only where there is no cognizable legal theory or an "absence of sufficient facts alleged to support a cognizable legal theory." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018) (quoting Navarro, 250 F.3d at 732).

When a plaintiff lacks standing to bring suit, the court does not have subject matter jurisdiction, so a motion to dismiss under Rule 12(b)(1) is appropriate. *Cetacean Community v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004); FRCP 12(b)(1). However, a motion may also be brought under Rule 12(b)(6) to dismiss for lack of standing. Cetacean Community, 386 F.3d at 1173.

**IV.**

**LEGAL ARGUMENT**

**A. City Attorney's Office and Department of Public Safety Are Not Proper Defendants and Should be Dismissed with Prejudice.**

Plaintiff names the City Attorney Office and the Department of Public Safety as defendants, yet the Complaint also names the City of Las Vegas as the municipal corporation. The City Attorney's Office and the Department of Public Safety cannot be sued in Federal Court. State law

1  determines a governmental entity's capacity to be sued in federal court. *See* Fed. R. Civ. P. 17(b);

2  *Streit v. Cnty. of Los Angeles*, 236 F.3d 552, 565 (9th Cir. 2001). In Nevada, each city and county

3  are political subdivisions of the state and independent legal entities, which means each city and

4  county can sue or be sued. *Clark County v. Lewis*, 498 P.2d 363, 365 (Nev. 1972); Nev. Rev. Stat.

5  § 41.031(2). But the same is not true of a department of public safety. Rather, that entity is a

6  department of a city or county and not an independent legal entity that can be sued in its own name.

7  *See, e.g.*, Nev. Rev. Stat. § 41.0305; *Wayment v. Holmes*, 912 P.2d 816, 819 (Nev. 1996) (holding

8  that "[t]he State of Nevada has not waived immunity on behalf of its departments of political

9  subdivisions, and the Washoe County District Attorney's office has not been conferred the power

10  to sue and be sued"). Thus, City Attorney's Office and Department of Public Safety should be

11  dismissed with prejudice leaving City of Las Vegas as the proper municipal party.

12  **B. Count I for First Amendment Violation Should Be Dismissed Because it Does Not**

13  **Plausibly Show Content Based Restriction or Viewpoint Discrimination.**

14  To state a claim under 42 U.S.C. § 1983, Plaintiff must allege (1) a deprivation of a federal

15  right (2) by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). The

16  U.S. Supreme Court has held that a forum that limits participation to certain groups does not run

17  afoul of the First Amendment if the limitation is "reasonable and viewpoint neutral." *Pleasant*

18  *Grove City, Utah v. Summum*, 555 U.S. 460, 470 (2009). Indeed, as long as the limitation is done

19  "without regard to the viewpoint of the excluded groups," there is no First Amendment violation.

20  *Cornelius v. NAACP Legal Defense and Educational Fund, Inc*., 473 U.S. 788, 813 (1985).

21  Moreover, the First Amendment is not offended where "neutral criteria and evenhanded policies"

22  are used to include recipients with viewpoints that are "broad and diverse." *Rosenberger v. Rector*

23  *and Visitors of University of Virginia*, 515 U.S. 819, 821 (1995).

24  Plaintiff asserts he was "restricted, suppressed, and penalized" and that restrictions

25  "favored" commercial performers while "excluding independent artists," but alleges no specific

26  ordinance or policy text, no specific citation issued to him under a challenged rule, and no concrete

27  facts demonstrating content or viewpoint discrimination as applied to his expression. *See* ECF No.

28  1 at ¶¶ 43-44. His general averments of "selective enforcement" and "image control" are

1   speculative and not tied to any discrete enforcement action against him resulting in sanction. *Id.*

2   ¶¶ 23-26, 44-45. Plaintiff admits that the special event permits contained language excluding all

3   performers neutrally during a special event. *Id.* at ¶ 27. The permits were reasonable and viewpoint

4   neutral. The permits were temporary and for a specific time period. Based on Plaintiff's own

5   allegations the permits limited all street performers without regard to the content of the street

6   performer or group. Thus, Plaintiff has failed to state a claim for a First Amendment Violation.

7       **C.  Plaintiff's Prior Restraint Claim Fails and must be dismissed.**

8       A prior restraint is an administrative or judicial order that forbids certain communications

9   issued before those communications occur. *Alexander v. United States,* 509 U.S. 544, 549–50,

10  (1993). As the United States Supreme Court has recognized, "[n]ot all injunctions that may

11  incidentally affect expression ... are prior restraints." *Madsen v. Women's Health Ctr., Inc.,* 512

12  U.S. 753, 763 n. 2, (1994) (internal quotation marks omitted).

13      An outright prohibition is not required to bring a prior restraint claim; rather, "a [licensing]

14  scheme that places unbridled discretion in the hands of a government official or agency constitutes

15  a prior restraint and may result in censorship." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225–

16  26, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (internal quotation marks omitted); *see also Long Beach*

17  *Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1025 (9th Cir. 2009) ("Regulations

18  must contain narrow, objective, and definite standards to guide the licensing authority and must

19  require the official to provide [an] explanation for his decision.") (internal quotation marks and

20  citation omitted).

21      Plaintiff fails to identify an order that forbids his communication. Plaintiff also fails to

22  identify a municipal ordinance or licensing process and relies on a single line in a special event

23  document. Plaintiff points to a permit for October 31–November 1, 2025 stating "Street performers

24  are not authorized to participate in this event." *Id.* at ¶ 30. He alleges he did not appear that

25  weekend due to fear and thus suffered a chilling effect. *Id.* ¶ 31.  He does not allege he applied for,

26  was denied, or was cited under any permitting process; nor does he attach, quote, or challenge any

27  City ordinance establishing licensing criteria or procedural safeguards. Thus, Count two must be

28  dismissed.

1

**D. Plaintiff's Count Three for Retaliation is Unsupported, Conclusory and Must Be**

2

**Dismissed**

3       Plaintiff alleges he "spoke with officers," "recorded public officials," and "announced

4  intent to pursue legal remedies," and in response officers "threatened arrest," made an "incident

5  slip," and "refused to accept" a complaint. Id. at   ¶¶56-57. He pleads no citation issued, no arrest,

6  and no concrete enforcement consequence. The alleged statements do not plausibly constitute

7  adverse action that would chill a person of ordinary firmness, and the Complaint itself alleges

8  Plaintiff initiated contact and continued to speak. The causation allegations rely on speculation

9  about animus and "policy."

10      **D.  Plaintiff's Count IV Fourth Amendment Violation Fails to State a Claim and must be**

11          **dismissed.**

12      The Fourth Amendment prohibits unreasonable searches and seizures. U.S. CONST. amend.

13  IV. To assert a viable claim, a plaintiff must allege that there was a search or seizure as

14  contemplated by the Fourth Amendment and that the search or seizure was unreasonable.

15  *Maryland v. Buie*, 494 U.S. 325, 331 (1990); *see also Hammond v. Nevada*, No. 2:24-cv-00310-

16  JAD-EJY, 2024 WL 3721151, at *3 (D. Nev. Aug. 7, 2024). Prolonged detention is a theory of

17  liability for an unlawful seizure claim, as a seizure can become unlawful "if it is prolonged beyond

18  the time reasonably required to complete th[e] mission of issuing a ticket for the violation."

19  *Rodriguez v. United States*, 575 U.S. 348, 350–51 (2015) (citation omitted).

20      Here, Plaintiff does not plead a search or seizure and the alleged safety command to keep

21  his hands out does violate his rights. Here, Plaintiff alleged that Officer Bryan ordered Plaintiff to

22  keep his hands out of his pockets and stated he could place them in his pockets if he allowed a pat

23  down search. ECF No. 1 at ¶¶64-65. Plaintiff complied due to fear of arrest, removed his shoes,

24  and was <u>not</u> arrested or searched. Plaintiff's allegation to keep his hands visible do not constitute

25  a seizure. There was no physical force alleged or anything restricting his movement. Based on

26  plaintiff's allegations he fails to state a Fourth Amendment violation and Count Four should be

27  dismissed.

28

**E.  Plaintiff Procedural Due Process and Equal Protection Claim Fail and Must be Dismissed.**

The United States Supreme Court consistently has held that some form of hearing is required before an individual is finally deprived of a property interest. *Wolff v. McDonnell*, 418 U.S. 539, 557-558, (1974). *See*, e. g. *Phillips v. Commissioner of Internal Revenue*, 283 U.S. 589, 596-597, (1931). The "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society." *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 168, 71 S.Ct. 624, 646, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, (1976) (internal citations omitted.)

Here, Plaintiff alleges "verbal trespass warnings" and "closures" without notice or hearing. He does not allege he was actually excluded via a written trespass order, cited, or prosecuted, nor that state post-deprivation remedies were unavailable.

The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). The United States Supreme Court has recognized that the Equal Protection Clause may, in some circumstances, afford individuals relief from intentional, irrational, and differential treatment at the hands of the Government. *E.g., Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam).

Here, Plaintiff alleges performers were "targeted" while others were not, but pleads no similarly situated comparators nor facts showing intentional discrimination. Plaintiff's Complaint contains nothing more than conclusory allegation. Thus, Plaintiff's Count Five should be dismissed.

**F.  Plaintiff's *Monell* claim should be dismissed.**

Plaintiff claims a *Monell* violation against the City because the City and Fremont Street Experience jointly maintained a policy of suppression: 1) prohibiting performers during commercial events without legal justification; 2) authorizing officers to fabricate or alter incident documentation; 3) refusing to accept citizen complaints and 4) training officers to view performers as "obstructions" and the City Attorney's Office ratified these practices instructing marshals to cite for obstruction. ECF No. 1 at ¶¶ 81-85.

The pleading standard for *Monell* claims is the same for all claims. Plaintiff should not be allowed to plead conclusory *Monell* claims to bypass the pleading stage and go on an improper fishing expedition for *Monell* discovery. *Starr,* 652 F.3d at 1216 ("the factual allegations that are taken as true [in *Monell* claims] must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.") Accordingly, "[a]llegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable to opposing party to defend itself effectively." *Id*.

Local governments can be sued directly under § 1983 <u>only</u> if they maintain a policy or custom that results in a violation of the plaintiff's constitutional rights. *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 690–91 (1978) (emphasis added). To impose *Monell* entity liability under § 1983 for a violation of constitutional rights, a plaintiff must show that (1) the plaintiff possessed a constitutional right and was deprived of that right, (2) the municipality had a policy, (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right, and (4) the policy was the moving force behind the constitutional violation. *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill,* 130 F.3d 432, 438 (9th Cir. 1997). The Ninth Circuit has explained how a policy may be established:

> There are three ways to show a policy or custom of a municipality: (1) by showing "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."

1   *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (quoting *Ulrich v. City and Cty. of*

2   *San Francisco*, 308 F.3d 968, 984–85 (9th Cir. 2002)); *accord, e.g., Parker v. City of Pittsburg*,

3   No. 17-cv-01563-LB, 2017 WL 2986225, at *5 (N.D. Cal. July 13, 2017) (applying standard on a

4   motion to dismiss).

5        As established above, because Plaintiff does not state plausible claims for any underlying

6   Fourth or Fourteenth Amendment violations, he was not deprived of any constitutional right and

7   the *Monell* analysis can and should end there. Moreover, because Plaintiff's Complaint does not

8   set forth a policy, custom or practice of the City to subject it to *Monell* liability, nor does Plaintiff

9   articulate ratification of a purported policy by someone with final policy-making authority,

10  Plaintiff's *Monell* claim fails as a matter of law.

11       1.   Plaintiff fails to identify a longstanding practice or custom.

12       To plead a *Monell* claim, the policy, practice or custom must consist of more than random

13  acts or isolated events. *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443–44 (9th Cir. 1989),

14  *overruled on other grounds by Bull v. City and Cty. of San Francisco,* 595 F.3d 964 (9th Cir.

15  2010)). The custom must be so persistent and widespread that it constitutes a "permanent and well

16  settled city policy." *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011)). "Isolated

17  or sporadic incidents," by contrast, will not support *Monell* liability against a municipality. *Id*.

18       Here, Plaintiff has failed to articulate a specific policy that could possibly subject the City

19  to *Monell* liability. Rather than identify any actual policy, Plaintiff makes conclusory statements

20  through his Complaint. Plaintiff asserts "official customs, policies, and deliberate practices" but

21  identifies only generic categories such as "prohibiting or restricting performers during commercial

22  events," "refusing to accept citizen complaints," and "training officers to view performers as

23  'obstructions.'" He pleads no factual content showing a longstanding practice.  Plaintiff provides

24  zero allegation of any actual policy, or any other specific incidents that could in any way indicate

25  this single instance is reflective of a City-mandated policy.

26       Yet failing to identify an actual City policy and instead relying upon a single incident to

27  allege a *Monell* policy, custom or practice is insufficient as a matter of law to maintain a *Monell*

28  claim. *See, e.g., Guarino v. Las Vegas Metro. Police Dep't*, No. 2:13-cv-02135-GMN-NJK, 2014

WL 12791070, at *4 (D. Nev. July 21, 2014) (wherein this Court held that a single instance of an alleged detention of the plaintiff was "too nebulous to serve as evidence of a municipal policy under *Monell*."); *Montoya v. Smith*, No. 2:16-cv-00032-JAD-VCF, 2016 WL 3511185, at *5 (D. Nev. June 27, 2016) (Under *Monell*, a single instance of misconduct does not establish a municipal custom, and a conclusory allegation of "numerous instances" of other similar conduct "lacks the factual content that *Iqbal* requires.") Accordingly, Plaintiff's failure to sufficiently plead a custom or policy to support a *Monell* claim warrants dismissal.

       2.  <u>Plaintiff's *Monell* ratification claim fails.</u>

       Plaintiff fails to plead that an official with final policymaking authority has ratified these decisions

       To plead a *Monell* claim through ratification, a plaintiff must allege that the authorized policymaker(s) approved a subordinate's decision and the basis for it. *Patino v. Las Vegas Metro. Police Dep't*, 207 F. Supp. 3d 1158, 1167 (D. Nev. 2016), *aff'd*, 706 F. App'x 427 (9th Cir. 2017) (citing *Lytle v. Carl,* 382 F.3d 978, 987 (9th Cir. 2004). Specifically, "[t]he policymaker must have knowledge of the constitutional violation and actually approve of it." *Id*. The ratification doctrine also requires that a subordinate's actions be cast in the form of a policy statement and **expressly** approved by the supervising policymaker. *Wells v. City of Las Vegas*, No. 2:21-cv-1346-JCM-EJY, 2024 WL 2028007, at *15 (D. Nev. May 7, 2024) (citing *St. Louis v. Praprotnik*, 485 U.S. 112 (1988).

       Here, Chapman's ratification claim fails because Chapman does not allege any official with final policymaking authority. Plaintiff does not allege: 1) that a policymaker had knowledge of the alleged misconduct of the Defendant officers, or alleged misconduct of any other marshal; 2) that a policymaker was present when the single incident at issue occurred; or 3) that a policymaker expressly approved of the relevant actions of the Defendant officers, or any other marshal for that matter. Instead, Chapman relies upon a loose recitation of *Monell* elements and conclusory allegation. Such allegations do not sufficiently plead ratification to support a *Monell* claim and therefore, dismissal is required.

       3.  <u>Plaintiff does not sufficiently plead the final two elements of *Monell.*</u>

A municipality's culpability for a deprivation of rights "is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To satisfy § 1983, a municipality's "failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id*.

Yet deliberate indifference is a stringent standard of fault, requiring "that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 410 (1997). Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, "the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick,* 563 U.S. at 61.

In no way has Plaintiff sufficiently pled any facts to support his deliberate indifference allegation other than to throw in the phrase itself and the phrase "failure to train." Specifically, plaintiff does not allege a City policymaker was on actual or constructive notice of any deficiency in the City's training of its marshals with respect to alleged constitutional violations, or that a City actor affirmatively disregarded a known consequence of any alleged deficient training of marshals. Again, conclusory statements and/or recitation of elements of a claim cannot withstand a motion to dismiss. Because Plaintiff has not shown the final two elements of a *Monell* claim: that a purported policy "amounts to deliberate indifference" of his rights and that a policy is the "moving force" behind an alleged constitutional violation, Plaintiff's *Monell* claim must be dismissed. *Guarino,* 2014 WL 12791070, at *4.

### G. Plaintiff Seventh Count for Conspiracy Must be Dismissed.

A violation of § 1985 requires the following: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in her person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of Carpenters & Joiners of America, Local 610,*

*AFL–CIO v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983).

Here, Plaintiff alleges "meetings" and "orders from the City Attorney," but provides only conclusory assertions of agreement. Section 1983 conspiracy requires an underlying constitutional violation, which is pled. Section 1985(3) requires class-based, invidious discriminatory animus, which is not alleged; "street performers" are not a protected class, and no facts support animus. Thus, Count Seven should be dismissed.

**H. Plaintiff References to RICO Fails to State a Claim**

"The elements of a civil RICO claim are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.,* 431 F.3d 353, 361 (9th Cir.2005) (internal quotation marks and citation omitted). "[R]acketeering activity" includes, *inter alia,* "any act which is indictable" under the Hobbs Act, 18 U.S.C. § 1951, or "any act or threat involving ... extortion, ... which is chargeable under State law." 18 U.S.C. § 1961(1)(A), (B).

Here, although the caption references "CIVIL RICO (18 U.S.C. §§ 1961–1968)," the Complaint pleads no RICO count elements: no distinct enterprise, no conduct of the enterprise, no pattern of racketeering activity, and no predicate acts under § 1961(1). Any RICO theory should be dismissed with prejudice as futile.

**I. The City is entitled to Discretionary Immunity on Plaintiff's Claim for Negligent Hiring, Training, and Supervision**

A person cannot maintain an action against an officer or employee of Nevada "[b]ased upon the exercise of performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies … or of any officer … ***whether or not the discretion involved is abused***." NRS 41.032(2) (emphasis added). Nevada's discretionary-function statute mirrors the Federal Tort Claims Act ("FTCA"), so Nevada law looks to federal law relating to the FTCA for guidance on what type of conduct is protected by NRS 41.032. *Martinez v. Maruszczak,* 123 Nev. 433, 168 P.3d 720 (Nev. 2007).

In *Berkovitz* and *Gaubert*, the United States Supreme Court proffered a two-part test to

1    guide courts in determining whether actors have discretionary immunity from FTCA claims.

2    *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988); *United States v. Gaubert*, 499 U.S. 315,

3    322 (1991). In *Martinez*, the Nevada Supreme Court explicitly adopted that test as relates to

4    Nevada's discretionary-function immunity statute NRS 41.032. *Martinez*, 123 Nev. at 445, 168

5    P.3d at 728-29. Under the *Berkovitz-Gaubert* test, an act is entitled to discretionary immunity if:

6    (1) the act involves elements of judgment or choice; and (2) the act is based on considerations of

7    public policy. *Id.*

8        Nevada's discretionary-function immunity exception protects state agency decisions

9    concerning the scope and manner in which state agencies conduct various acts. *See Shafer v. City*

10   *of Boulder*, 896 F.Supp.2d 915, 938 (D. Nev. 2012) (citation omitted).  A court does not ask

11   whether the official abused his or her discretion; but only whether the acts concerned a matter in

12   which the official had discretion. In other words, the immunity is not infinitely broad, but once it

13   is determined that the acts involved judgment or choice on social, economic, or political policy

14   considerations, the immunity applies even to abuses of discretion. *Belch v. Las Vegas Metro Police*

15   *Dep't.,* No. 2:10-CV-00201-GMN, 2011 WL 1070175, at *4 (D Nev. 2011).

16       Any trainings involving City employees generally, and City marshals specifically,

17   regarding how they perform their job duties would fall squarely under the immunities of NRS

18   41.032.  *See, e.g., Ward v. City of Henderson, Nevada,* No. 2:20-cv-02331-JAD-NJK, 2021 WL

19   2043937, at *4 (D. Nev. May 21, 2021)("Nevada law accords the City broad immunity based

20   on…a discretionary function…which generally includes the hiring and managing of employees.")

21   The Nevada Supreme Court has noted that training decisions regarding officer conduct generally

22   "involve an element of choice," and that these decisions involve "the evaluation of economic,

23   social and political considerations" because they involve determining whether the training policies

24   are sufficient to meet the community's needs. *Miller v. Nye Cnty*., 488 F. Supp. 3d 973, 981 (D.

25   Nev. 2020), citing *Paulos v. FCH1, LLC*, 136 Nev. 18, 456 P.3d 589, 595 (2020). The Ninth Circuit

26   and Nevada district courts routinely hold that "decisions relating to the hiring, training, and

27   supervision of employees usually invoke policy judgments of the type Congress intended the

28   discretionary function exception to shield." *Vickers v. United States,* 228 F.3d 944, 950 (9th Cir.

2000)(citing cases); *Ramirez v. Clark County,* 2011 WL 3022406 (D. Nev. 2011)("defendants are immune from suit pursuant to NRS 41.032 for their supervision and training); *Beckwith v. Pool,* 2013 WL 3049070, *6 (D. Nev. 2013)(discretionary function immunity bars claims for negligent hiring, training and supervision.)

In Nevada, the decision of a police officer to effectuate an arrest is a discretionary decision entitled to immunity under NRS 41.032(2). An officer's decision as to how to accomplish a particular seizure or search is considered a discretionary determination under Nevada law, and officers are therefore immune from suit as to state law claims arising therefrom in most cases. *See Ortega v. Reyna*, 114 Nev. 55, 62, 953 P.2d 18, 23 (Nev. 1998)(no civil liability for officer's discretionary decision to arrest driver for allegedly refusing to sign a traffic ticket—immunity under NRS 41.032(2) applied.) This Court has affirmed on numerous occasions that police officers in Nevada are entitled to discretionary function immunity under NRS 41.032 in conducting an investigation and effectuating an arrest so long as the officer does not violate a mandatory directive in doing so. *See, e.g., Sandoval v. Las Vegas Metro. Police Dep't*, 854 F. Supp. 2d 860 (D. Nev. 2012), aff'd in part, rev'd in part, 756 F.3d 1154 (9th Cir. 2014); *see also Napouk v. Las Vegas Metro. Police Dep't,* 669 F. Supp. 3d 1031 (D. Nev. 2023) (whether to detain or arrest a suspect and how to do so are discretionary functions of the police department); *see also Mitchell v. Las Vegas Metro Police Dep't.,* No. 217CV2188JCMGWF, 2018 WL 1568670 (D. Nev. 2018) (finding that officer's decision to arrest met the two factors of the discretionary immunity test). Only "decisions made in bad faith, such as 'abusive' conduct resulting from 'hostility' or 'willful or deliberate disregard' for a citizen's rights, aren't protected under the immunity statute even if they arise out of a discretionary function." *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1133 (9th Cir. 2017).

Here, Plaintiff alleged that Officer Bryan ordered Plaintiff to keep his hands out of his pockets and stated he could place them in his pockets if he allowed a pat down search. ECF No. 1 at ¶¶64-65. Plaintiff further alleged that Officer Jopalian instructed him to arrest for obstruction if Plaintiff continued speaking. *Id*. at ¶67. Plaintiff further alleged the DPS Officers failed to take complaints. *Id.* at ¶73-75.

1   Thus, the City's alleged failure to hire and train personnel competent in constitutional law

2   and public engagement "squarely meet both elements of the *Berkowitz-Gaubert* test." *Miller,* 488

3   F. Supp. 3d at 981. Therefore, the City is immune from Plaintiff's negligent training and

4   supervision claim.  Plaintiff does not allege that the City acted in bad faith in its training or

5   supervision, underscoring why discretionary immunity precludes this claim. *See Ward,* 2021 WL

6   2043937 at *4.

7   **J.   Plaintiff cannot meet the elements for Injunctive Relief**

8   A plaintiff seeking a permanent injunction must demonstrate: (1) that he has suffered an

9   irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to

10  compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and

11  defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved

12  by a permanent injunction. See, *e.g., Weinberger v. Romero—Barcelo,* 456 U.S. 305, 311–313

13  (1982); *Amoco Production Co. v. Gambell,* 480 U.S. 531, 542 (1987); *La Quinta Worldwide LLC*

14  *v. Q.R.T.M., S.A. de C.V.,* 762 F.3d 867, 879 (9th Cir. 2014). The decision to grant or deny

15  permanent injunctive relief is an act of equitable discretion by the district court, reviewable on

16  appeal for abuse of discretion. *Romero–Barcelo,* 456 U.S., at 320. Injunctive relief, whether

17  temporary or permanent, is an "extraordinary remedy, never awarded as of right." *Winter v.*

18  *Natural Res. Defense Council,* 555 U.S. 7, 24 (2008).

19  Here, Plaintiff has failed to establish that he can meet the elements of injunctive relief.

20  Plaintiff seeks sweeping institutional reforms, personnel actions, and expungement of citations and

21  arrests for all "street performers" since 2023. He lacks standing to seek broad third-party relief,

22  the requests are not redressable via his individual claims, and they are not tied to any viable cause

23  of action or final policy. These prayers for relief should be dismissed or stricken.

24  **K.  The City is Not Liable for the Alleged Torts**

25  Plaintiff alleges three tort claims against the City: 1) negligence; 2) intentional infliction

26  of emotional distress; and 3) abuse of process. The defendant DPS officers' conduct is the

27  underlying basis for these claims.

28  **1.   Negligence**

Plaintiff alleges Defendants owed a duty to act with reasonable care in enforcement of law, supervision of personnel, and the regulation of public performance spaces. ECF No. 1 at ¶ 102. Plaintiff further alleges that Defendants breached that duty by harassing, threatening, and excluding Plaintiff from public areas without lawful cause, fabricating incident reports and failing to train. *Id.* at ¶ 103. To prevail on a negligence claim, a plaintiff must establish four elements: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages. *Turner v. Mandalay Sports Ent., LLC,* 124 Nev. 213, 217, 180 P.3d 1172, 1175 (2008). State officials have a duty to exercise ordinary care in performing their duties. *Butler ex rel. Biller v. Bayer*, 123 Nev. 450, 464, 168 P.3d 1055, 1065 (2007).

Here, Plaintiff has failed to plead the elements of a negligence cause of action let alone plead with any type of specificity. Even if plaintiff did properly plead, NRS 41.032(2) grants immunity to state and local entities and their employees for actions or omissions based upon the exercise or performance (or failure to exercise or perform) a discretionary function. Decisions about enforcement priorities, crowd control, performance zones, and issuance of trespass warnings are classic discretionary functions. See *Martinez v. Maruszczak*, 123 Nev. 433, 168 P.3d 720, 729–30 (2007) (adopting federal discretionary-function test). Thus, negligence and related tort claims arising from such discretionary judgments are barred.

## 2. Intentional Infliction of Emotion Distress

To state an IIED claim under Nevada law, a plaintiff must allege that (1) the defendant engaged in "extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress," (2) the plaintiff "suffered severe or extreme emotional distress," and (3) "actual or proximate causation." *Star v. Rabello*, 97 Nev. 124, 625 P.2d 90, 91–92 (1981). "A municipal employer cannot be vicariously liable in the absence of unlawful conduct." *Triolo v. Nassau Cnty.,* 24 F.4th 98, 110 (2d Cir. 2022).

Plaintiff has not sufficiently alleged facts to impute liability on the City. Plaintiff makes conclusory general allegations against all defendants and asserts, "Defendants' conduct- including verbal threats, humiliation in public, denial of complaint rights, and retaliatory enforcement -was extreme and outrageous…" ECF No. 1 at ¶104.  The alleged conduct (verbal exchanges, a

1    nonbinding "verbal trespass," and an incident number) does not rise to "extreme and outrageous"

2    conduct as a matter of law, nor are severe emotional distress facts pled beyond labels. Courts

3    regularly dismiss such conclusory statements alleging employer liability based on foreseeability

4    because they "fail to meet the pleading standard required." *Shaw v. NP Santa Fe, LLC*, No. 2:18-

5    cv-515-JCM-PAL, 2018 WL 6419293, at \*4 (D. Nev. Dec. 6, 2018).

6              **3. Abuse of Process**

7              Under Nevada law, an abuse of process claim requires two elements: "(1) an ulterior

8    purpose by the defendants other than resolving a legal dispute, and (2) a willful act in the use of

9    the legal process not proper in the regular conduct of the proceeding." *LaMantia v. Redisi*, 38 P.3d

10   877, 879 (Nev. 2002) (quoting *Posadas v. City of Reno*, 851 P.2d 438, 444–45 (Nev. 1993))

11   (internal quotation marks omitted).

12             "Process" means formal judicial process—e.g., summons, subpoenas, writs—not mere

13   verbal warnings or informal "incident slips." Here, Plaintiff alleges no actual lawsuit, charge, or

14   formal court process misused against him. He specifically states that he was never arrested and

15   that citations and incident slips were either minimal or not pursued. Therefore, the abuse-of-

16   process claim fails.

17        **L. Individual Capacity Claims against the City Attorney's Office and its Attorneys are**

18             **Barred by Prosecutorial Immunity.**

19             Plaintiff alleges the "City Attorney's Office" directed and ratified enforcement and told

20   officers they could remove performers. See ECF No. 1 at ¶10. To the extent Plaintiff attempts to

21   sue individual city attorneys for actions taken in the course of advising or prosecuting enforcement,

22   such claims are barred by absolute prosecutorial immunity when the actions are intimately

23   associated with the judicial phase of the criminal process. *Imbler v. Pachtman*, 424 U.S. 409, 430–

24   31 (1976).

25             Even for administrative or advisory roles, government attorneys are at least entitled to

26   qualified immunity unless clearly established law put them on notice that their advice to law

27   enforcement on event management violated the Constitution. Plaintiff cites no such clearly

28   established precedent; his own cited cases (*Reed*, *City of Lakewood*, *Forsyth County*, etc.) concern

facial challenges to ordinances and permit schemes, not private advisory conversations.

Moreover, the City Attorney's Office, as a municipal department, is not a suable "person" distinct from the City under § 1983. Thus, all claims against the City Attorney's Office, and any implied claims against individual city attorneys acting in their official capacities, should be dismissed.

**M. The Defendant Officers and City Attorney are shielded by qualified immunity.**

The claims against the Defendant officers and the City attorneys should be dismissed because they are shielded by qualified immunity. *Polanco v. Diaz*, 76 F.4th 918, 925 (9th Cir. 2023) (dismissal of complaint due to qualified immunity appropriate). A plaintiff may not recover damages against an official in a 42 U.S.C. § 1983 action if qualified or "good faith" immunity applies to the official's actions. *Gomez v. Toledo*, 446 U.S. 635, 639 (1980). Indeed, officers are entitled to qualified immunity under section 1983 unless: 1) they violated a federal statutory or constitutional right, and 2) the unlawfulness of their conduct was clearly established at the time. *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018). "Clearly established" means that, at the time of the officer's conduct, the law was "'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *Id.* at 63 (internal citations omitted). In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." *Id.* (internal citations omitted).

Here, Plaintiff failed to articulate facts establishing a First Amendment right. There was no speech restriction and based on Plaintiff own allegations the language in the special event permit applied to all street performers. Further, Plaintiff failed to articulate facts establishing that Defendants violated his Fourth Amendment rights. There was no search, seizure, or detention alleged. Additionally, plaintiff failed to plead sufficient facts demonstrating that the Defendants' conduct was <u>clearly</u> established as unlawful. Yet federal case law supports the reasonableness of the Defendant officer's conduct under the Fourth Amendment. Plaintiff failed to plead facts sufficient to overcome the Defendant officer's qualified immunity. Thus, the Complaint should be dismissed.

**N. Punitive damages are not available against the City.**

1    Plaintiff seeks an award of punitive damages against the City for the *Monell* claim and its

2    state tort claims of Negligence, Intentional Infliction of Emotional Distress, and Abuse of Process.

3    ECF No. 1 at ¶¶ 108, 109, and 118.  However, punitive damages are not available against the City

4    because municipalities are immune from punitive damages for claims brought under 42 U.S.C. §

5    1983.  *City of Newport v. Fact Concerts, Inc*., 453 U.S. 247, 271. Thus, Plaintiffs cannot recover

6    punitive damages against the City for its *Monell* claims. Further, as a political subdivision of the

7    State of Nevada, the City is exempt from punitive damages for state tort claims. NRS 41.035(1);

8    *Eggleston v. Stuart*, 137 Nev. 506, 514, 495 P.3d 482, 491 (2021). Thus, Plaintiffs cannot recover

9    punitive damages against the City for its claims of Negligence, Intentional Infliction of Emotional

10   Distress, and Abuse of Process either.  Therefore, Plaintiffs' requests for punitive damages should

11   be dismissed as a matter of law.

12                                        **V.**

13                                  **CONCLUSION**

14   For all the foregoing reasons, the City respectfully requests that this Court grant Defendant

15   City of Las Vegas' Motion to Dismiss in its entirety.

16   DATED this _8th_ day of December, 2025.

17                          JEFFRY M. DOROCAK
                            City Attorney
18

19                          By:    ___/s/ *Michelle Di Silvestro Alanis*___
20                                 MICHELLE DI SILVESTRO ALANIS
                                   Deputy City Attorney
21                                 Nevada Bar No. 10024
                                   495 South Main Street, Sixth Floor
22                                 Las Vegas, NV 89101
                                   Attorneys for CITY OF LAS VEGAS

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on December 8, 2025, I served a true and correct copy of the

foregoing CITY OF LAS VEGAS'S MOTION TO DISMISS through the CM/ECF system of the

United States District Court for the District of Nevada (or, if necessary, by United States Mail at

Las Vegas, Nevada, postage fully prepaid) upon the following:

Eliazer D. Chapman
5100 East Tropicana Avenue, #53A
Las Vegas, NV 89122
Attorneys for Pro Per Plaintiff

_____/s/ *Michelle Di Silvestro Alanis*_____
AN EMPLOYEE OF THE CITY OF LAS VEGAS